[Cite as *State v. Cebula*, 2014-Ohio-3276.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2013-L-085** |
| - vs - | : | |
| TIMOTHY CEBULA, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 13 CR 000268.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Harvey B. Bruner*, Harvey B. Bruner Co., LPA, Hoyt Block Building, 700 West St. Clair Avenue, Suite 110, Cleveland, OH 44113 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1}   This appeal is from the Lake County Court of Common Pleas.  Appellant Timothy Cebula pled guilty to two counts of forgery and one count of theft.  Before he pled guilty, however, he filed a motion for intervention in lieu of conviction, (ILC) which the trial court denied.  Cebula timely appeals.  He asserts, in part, that the trial court erred by not holding a hearing on his ILC motion.  For the following reasons, we affirm.

{¶2} In June 2012, Cebula worked for a small company, MarinerTek, in a sales capacity. As part of his job, he was given an expense account to help attract potential clients and was also responsible for making contracts on behalf of the company. During his time with MarinerTek, however, Cebula used money from the expense account for his own personal use and forged signatures on a purported contract. He was subsequently charged with two counts of forgery in violation of R.C. 2913.31(A)(1) and R.C. 2913.31(A)(3) and one count of theft in violation of R.C. 2913.02(A)(2), all of which are fifth degree felonies.

{¶3} Shortly after discovery, Cebula moved for ILC because Cebula's mental illness may have played a factor in the commission of the offenses. The trial court indicated that it would consider the motion and ordered an evaluation be conducted on Cebula and scheduled a hearing. The hearing on the ILC motion was combined with Cebula's plea and sentencing hearing. The following exchange contains the entirety of the hearing on the ILC motion:

{¶4} "JUDGE LUCCI: Now you have previously filed a motion for intervention in lieu of conviction, on June 27, 2013. I issued an order on July 10, 2013 referring you to the Adult Probation Department for a pre-sentence report from the Lake County Adult Probation Department, and I have received an intervention work-up by Dr. Rindsberg of the Adult Probation Department. Those are dated August 6th and August 7th respectively; and I have also received a victim impact statement from MarinerTek. I have also met in chambers with counsel and Probation to find out the position of the parties and it is my understanding that the State of Ohio contends that you are ineligible, based upon the criteria and the intervention work-up by Dr. Rindsberg, and regardless of eligibility—even if you are eligible—I have informed your attorney that

2

based upon the pre-sentence report, based upon the victim impact statement, that I would not grant intervention here, and also, by the way, based on Dr. Rindsberg's report, with the various conflicts and inconsistencies there. Do you understand that?

{¶5} "MR. CEBULA: Yes.

{¶6} "JUDGE LUCCI: Do you understand that intervention is not a right, it's a privilege, and that it is always up to the judge, and if the judge believes that intervention would demean the offense, or that the public would be ill-served by granting intervention, or if the Court does not believe that mental health issues were a factor leading to your criminal behavior amongst other things, that the court does not have to grant intervention?

{¶7} "MR. CEBULA: Yes.

{¶8} "JUDGE LUCCI: And you understand that it would not be an appealable decision if I don't grant intervention?

{¶9} "MR. CEBULA: Yes."

{¶10} The hearing continued and Cebula pled guilty to all counts and was sentenced to a community control sanction, amongst other things. This appeal followed.

{¶11} As his sole assignment of error, Cebula contends that:

{¶12} "The trial court's denial of appellant's request for intervention in lieu of conviction was an abuse of discretion."

{¶13} Within this assignment of error, Cebula makes three arguments. First, he asserts that there was no hearing conducted to determine Cebula's eligibility for ILC. Next, he argues that the trial court needed to make findings of fact on Cebula's eligibility for ILC. He also argues that the record demonstrates Cebula would meet all

3

of the criteria for ILC. The state responds that Cebula, by pleading guilty, has waived any alleged error with the trial court's ruling on the ILC motion. The state also alleges that Cebula does not meet the eligibility criteria for ILC.

{¶14} We first turn to waiver. The state argues that per *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) Cebula waived this argument. Under *Tollett*, a guilty plea will generally waive the consideration of all constitutional issues except for whether the plea was intelligent and voluntary. *See also State v. Spates*, 64 Ohio St.3d 269, 272 (1992). Later, the U.S. Supreme Court clarified that *Tollett* did not stand for the proposition that a guilty plea waives all constitutional issues. *Menna v. New York*, 423 U.S. 61, 62, fn 2. (1975). Rather, "a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. . . . A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the [v]alid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." *Id.* Therefore, where the defendant alleges error that accepts the validity of the guilty plea, *Tollett* does not bar the claim. *Id.*

{¶15} Moreover, *Tollett*'s pronouncement was made in the context of federal habeas corpus proceedings. Therefore, the U.S. Supreme did not consider the possibility of rights guaranteed by state statutes such as the one currently at issue here. *See Moreland v. Bradshaw*, 699 F.3d 908, 922 (6th Cir. 2012) (recognizing violations of state law are not cognizable in federal habeas review).

{¶16} More importantly, intervention in lieu of conviction focuses on the response to the defendant's guilt rather than the question of whether the defendant is guilty. For instance, under R.C. 2951.041(C) a defendant is required to plead guilty to

the offense for which he or she seeks intervention. Furthermore, the Ohio Supreme Court has explained that "'[i]n enacting R.C. 2951.041, the legislature made a determination that when chemical abuse is the cause or at least a precipitating factor in the commission of a crime, it may be more beneficial to the individual and the community as a whole to treat the cause rather than punish the crime.'" *State v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, ¶10, quoting *State v. Shoaf*, 140 Ohio App.3d 75, 77 (10th Dist. 2000) (referring to an older version of R.C. 2951.041). Therefore, when viewed in light of ILC's requirements and purpose, he has not waived the alleged error surrounding his ILC motion by pleading guilty.

{¶17} We now turn to the merits. R.C. 2951.041(A)(1) does not require the trial court to conduct a hearing, merely because ILC is requested. *State v. Rice*, 180 Ohio App.3d 599, 2009-Ohio-162, ¶14-15 (2d Dist.). However, if the trial court "considers" the ILC motion, the trial court must then hold a hearing to determine if the defendant is *eligible.* R.C. 2951.041(A)(1).

{¶18} Other courts have described a trial court's mere consideration of the ILC motion as the trigger to the right to hearing as "inartful" and we agree with that assessment. *See State v. Branch*, 2d Dist. Montgomery No. 25261, 2013-Ohio-2350, ¶12. By virtue of an ILC motion being filed, a trial court always considers the motion to some degree. However, such an interpretation is inconsistent with the trial court's ability to reject the ILC motion without a hearing. Fortunately, we do not have difficulty determining whether the trial court "considered" the ILC motion in this case. In an order referring defendant for evaluation on the ILC motion, the trial court stated that "it appears that defendant may be eligible" for ILC. This shows that the trial court considered the request.

5

{¶19} Regarding the hearing issue, it is far from clear what the General Assembly meant when it stated that a hearing must be held. The Second District has also noted it is unsure whether R.C. 2951.041(A)(1) requires "a full evidentiary hearing, or the opportunity to be heard, similar to allocution[.]" *Branch*, *supra*. The Second District, however, did not decide this issue, and we also do not need to decide it.

{¶20} After meeting with counsel in chambers, the trial court stated that even if Cebula were eligible for ILC, he was still not going to grant Cebula's ILC motion. Therefore, whether Cebula was eligible was not determinative of his decision and a hearing on eligibility was not required. Although Cebula argues in his assignment of error that the trial court abused its discretion in denying the request for ILC, he advances no argument in his brief, nor cites to any case law that supports this proposition. App.R. 16(A)(7) requires the parties to present "'[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions . . . .'" It is not the appellate court's responsibility to root out meritorious arguments for the parties. *Tally v. Patrick*, 11th Dist. Trumbull No. 2008-T-0072, 2009-Ohio-1831, ¶22.

{¶21} Accordingly, the sole assignment of error is without merit. The judgment of the Lake County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only.